UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS DISTRICT COUNCIL NO. 1 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO,<br><br>    Plaintiff,<br><br>  v.<br><br>JULIAN MASONRY CORP., TITAN MASONRY, INC.; JULIAN BORCZYK, and MALGORZATA GOSCIMINSKA,<br><br>    Defendants. | Case No.  FILED: JULY 3, 2008<br>               08CV3833<br>Judge     JUDGE MANNING<br>               MAGISTRATE JUDGE SCHENKIER<br>               JH |

## COMPLAINT

Plaintiff Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("Union"), through its attorneys, states as follows by way of complaint against Julian Masonry Corp. ("Julian"), Titan Masonry, Inc. ("Titan"), Julian Borczyk ("Borczyk"), and Malgorzata Gosciminska ("Gosciminska"):

    1.    The Court has jurisdiction over this matter and venue is proper pursuant to §301 of the Labor-Management Relations Act, 29 U.S.C. §185(a) and (c).

    2.    The Union is a "labor organization" within the meaning of 29 U.S.C. §152(5), and maintains its principal place of business within this district.

    3.    Julian is an Illinois corporation in the mason contracting business, does business within this district, and is an "employer" within the meaning of 29 U.S.C. §152(2).

4. Titan is an Illinois corporation in the mason contracting business, does business within this district, and is an "employer" within the meaning of 29 U.S.C. §152(2).

5. Mr. Borczyk is an individual who is an "employer" within the meaning of 29 U.S.C. § 152(2), lives within this district, and, on information and belief, is the sole officer and shareholder of Julian.

6. Ms. Gosciminska is an individual who is an "employer" within the meaning of 29 U.S.C. § 152(2), lives within this district, and, on information and belief, is the sole officer and shareholder of Titan.

7. On or around June 1, 2002, Borczyk signed a short form collective bargaining agreement ("CBA") with the Union on behalf of G & B Construction, Inc. ("G & B").

8. The CBA incorporates the substantive terms of the agreements negotiated from time to time between the Union and various employer associations (the "Association Agreement").

9. The Association Agreement provides, among other things, that employers must utilize eligible members of the bargaining unit to perform bargaining unit work and must pay specified wages and fringe benefit fund contributions for such work, and that disputes are to be resolved through a grievance procedure that culminates in presentation of claims to, and resolution of those claims by, a joint arbitration board ("JAB").

10. Following a hearing conducted on August 25, 2005, the JAB ruled that based on the relationship among Julian, G & B, and Borczyk, and based on information

presented to the JAB about work performed by Julian, Julian had become bound to the CBA at least as of September 1, 2002, and was liable for any violations of the CBA.

11. The Union served that decision on Julian and its attorney by letters of September 30, 2005.

12. By letter of November 15, 2007, the Union informed Julian, Titan, Borczyk, and Gosciminska (together, the "Defendants") of an allegation that based on the relationship among them, each of them was bound to and liable for the obligations created under the CBA, and therefore each was liable for numerous violations of the CBA; and the Union further informed them that the allegations against them would be presented to the JAB at a hearing on December 3, 2007, which the letter urged them to attend.

13. On November 28, 2007, an attorney who indicated he represents Julian sent a letter to the Secretary of the JAB requesting a postponement, and the Union agreed to reschedule the case to February 7, 2008, the next session of the JAB.

14. The Union provided notice to Julian's attorney of the postponement and new hearing date by letter of December 5, 2007, and then provided further notice of the new hearing date to each of the Defendants by letters of January 17, 2008.

15. The JAB hearing was held as scheduled on February 7, with a representative of a constituent local affiliate of the Union presenting the case in support of the grievance, but with nobody appearing on behalf of any of the Defendants in opposition.

16. Following the presentation of evidence and arguments, the JAB rendered its award, and subsequently issued a written decision, a copy of which is attached to the complaint as Exhibit A.

17. The JAB sustained the grievance, ruled that for purposes of the CBA, Julian, Titan, Borczyk, and Gosciminska are one and the same and are all bound to and liable for the obligations under the CBA; ruled that there had been numerous violations of the CBA resulting in damages; and ordered that Julian, Titan, Borczyk, and Gosciminska pay damages totaling $226,154.04 to the Union and various fringe benefit trust funds identified in the Association Agreement, and also ruled that if the Defendants failed to comply with the award and there were any legal action concerning it, they would be required to reimburse the Union and/or the fringe benefit trust funds for all costs and legal fees incurred in such legal action and would be required to pay interest at the rate of 10% a year on all damages from February 7, 2008, to the date of payment.

18. The Union mailed copies of the arbitration award to each of the Defendants on or around March 5, 2008, along with a letter urging them to comply.

19. Each of the Defendants received the letter and copy of the award, and signed acknowledgments of receipt on March 6.

20. On March 10, 2008, an attorney who indicated he represents Borczyk, Gosciminska, and Titan wrote to the Union to voice his disagreement with the propriety of the award against his clients; and there was then an exchange of correspondence between him and the Union's lawyer.

21. Despite being served with the arbitration award and being urged to comply with it, the Defendants have failed to comply.

22. The Defendants' failure to comply with the arbitration award is a breach of the labor contract that the JAB properly found to be binding on them.

WHEREFORE, the Union respectfully asks that judgment be entered against Julian, Titan, Borczyk, and Gosciminska, jointly and severally, as follows:

(1) Ordering them to comply with the arbitration award by paying $226,154.04 in damages to the Union, for distribution as provided in the award;

(2) Ordering them to comply with the arbitration award by paying interest on that amount at the rate of 10% a year from February 7, 2008, to the date of payment;

(3) Ordering them to reimburse the Union and the benefit funds for all legal fees and costs incurred in this suit; and

(4) Granting such other relief as the Court deems just and proper.

        /s/ Barry M. Bennett
Attorney for
Illinois District Council No. 1
of the International Union of Bricklayers
and Allied Craftworkers, AFL-CIO

Barry M. Bennett
DOWD, BLOCH & BENNETT
8 South Michigan Avenue, 19th Floor
Chicago, IL  60603
(312) 372-1361

F:\B -DC 1\Julian Masonry\Complaint FINAL.wpd

IN ACCORDANCE WITH ARTICLE X OF THE COLLECTIVE BARGAINING AGREEMENT AND WORKING RULES BETWEEN THE ILLINOIS DISTRICT COUNCIL NO. 1 OF THE I.U.B.A.C. AND THE SIGNATORY CONTRACTORS, A MEETING WAS HELD ON FEBRUARY 7, 2008 AT 9:00 A.M. AT THE DISTRICT COUNCIL TRAINING CENTER, 2140 CORPORATE DRIVE, ADDISION, ILLINOIS 60101 TO RESOLVE A DISPUTE THAT CONCERNED VIOLATIONS OF **ARTICLE III, ARTICLE IV, ARTICLE VI, ARTICLE VII, ARTICLE VIII, ARTICLE XII, ARTICLE XIII, ARTICLE XV, ARTICLE XVIII, ARTICLE XIX, ARTICLE XXIV, AND ARTICLE XXVI** OF THE AGREEMENT. RICHARD LAUBER AND RICHARD PORTER WERE THE CONTRACTOR APPOINTEES PRESENT AND JOHN THOMPSON AND PETE CULVER WERE THE UNION APPOINTEES PRESENT. THE BUSINESSES AND INDIVIDUALS LISTED BELOW WERE INFORMED OF THE GRIEVANCE AND OF THE SCHEDULED DECEMBER 3, 2007 HEARING DATE BY LETTER OF NOVEMBER 15, 2007, BUT THE HEARING ON THE CASE WAS POSTPONED AT THEIR REQUEST AND THEY WERE THEN NOTIFIED ABOUT THIS MEETING BY LETTER OF JANUARY 17, 2008.

REPRESENTATIVE PRESENT FOR LOCAL 21-ILLINOIS : ROBERT FITAL

REPRESENTATIVE PRESENT FOR JULIAN MASONRY CORP. AND MR. JULIAN BORCZYK: NONE

REPRESENTATIVE PRESENT FOR TITAN MASONRY, INC., TITAN DEVELOPMENT & CONST. CORP., AND MS. MALGORZATA GOSCIMINSKA : NONE

AS DETERMINED BY THE JOINT ARBITRATION BOARD SESSION HELD AUGUST 25, 2005, JULIAN MASONRY CORP. IS BOUND TO THE TERMS OF A COLLECTIVE BARGAINING AGREEMENT, AND HAS BEEN BOUND SINCE AT LEAST SEPTEMBER 1, 2002.

AFTER HEARING THE CHARGES, ARGUMENTS, TESTIMONY, AND EVIDENCE BY ROBERT FITAL, THE JOINT ARBITRATION BOARD FINDS THAT FOR PURPOSES OF THE COLLECTIVE BARGAINING AGREEMENT, JULIAN MASONRY CORP., MR. JULIAN BORCZYK, PERSONALLY, TITAN MASONRY, INC., TITAN DEVELOPMENT & CONST. CO., AND MS. MALGORZATA GOSCIMINSKA, PERSONALLY, ARE ONE AND THE SAME AND ARE JOINTLY RESPONSIBLE FOR THE CONTRACTS AND OBLIGATIONS OF EACH OTHER. THOSE PERSONS AND ENTITIES WILL BE REFERRED TO TOGETHER IN THIS AWARD AS "THE CONTRACTOR".

THE JOINT ARBITRATION BOARD FINDS THAT THE CONTRACTOR DID VIOLATE ARTICLE III, ARTICLE IV, ARTICLE VI, ARTICLE VII, ARTICLE VIII, ARTICLE XII, ARTICLE XIII, ARTICLE XV, ARTICLE XVIII, ARTICLE XIX, ARTICLE XXIV, AND ARTICLE XXVI OF THE AGREEMENT BY DISREGARDING THE COLLECTIVE BARGAINING AGREEMENT ENTIRELY AND USING INELIGIBLE EMPLOYEES TO PERFORM BARGAINING UNIT WORK. THE JOINT ARBITRATION BOARD FINDS THAT THE CONTRACTOR HAS PERFORMED AT LEAST 4637 HOURS OF WORK IN VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT. BASED ON THE EVIDENCE PRESENTED, THE JOINT ARBITRATION BOARD CONCLUDES THAT 3005 HOURS OF THIS WORK WAS DONE DURING THE PERIOD COVERED BY THE JUNE 1, 2007 THROUGH MAY 31, 2008 CONTRACT AND THAT 1632 HOURS OF THIS WORK WAS DONE DURING THE PERIOD COVERED BY THE JUNE 1, 2004 THROUGH MAY 31, 2005 CONTRACT. THE JOINT ARBITRATION BOARD ORDERS THE CONTRACTOR TO MAKE DAMAGE PAYMENTS TO THE HEALTH AND WELFARE AND PENSION FUNDS COVERING THE AREA WHERE THE WORK WAS PERFORMED, THE ANNUITY FUND, AND THE DCTC

**EXHIBIT A**

JULIAN MASONRY CORP.
PAGE 2 OF 4

FUND EQUAL TO WHAT WOULD HAVE BEEN THE CONTRIBUTIONS FOR ALL SUCH HOURS IF THERE HAD BEEN PROPER COMPLIANCE, AND TO MAKE A SEPARATE DAMAGE PAYMENT TO ILLINOIS DISTRICT COUNCIL NO. 1 EQUAL TO THE CHECK-OFF DUES WHICH WOULD HAVE BEEN PAID IF THERE HAD BEEN PROPER COMPLIANCE WITH THE TERMS OF THE CONTRACT. THESE DAMAGE PAYMENTS AND ALL OTHER DAMAGE PAYMENTS WILL BE BASED ON THE RATES IN EFFECT DURING THE TIME THE WORK IN QUESTION WAS PERFORMED.

IN ADDITION, THE JOINT ARBITRATION BOARD IS ASSESSING DAMAGES AGAINST THE CONTRACTOR FOR WAGES WHICH WERE NOT PAID TO MEMBERS OF THE BARGAINING UNIT BECAUSE OF THE VIOLATIONS OF CONTRACT. BY EMPLOYING INDIVIDUALS WHO WERE NOT ENTITLED TO PERFORM BRICKLAYING WORK UNDER THE CONTRACT, THE CONTRACTOR DEPRIVED BRICKLAYERS WHO WERE ENTITLED TO SUCH WORK OF THE OPPORTUNITY TO DO IT AND TO EARN WAGES. ALSO, WE THINK IT IS MORE LIKELY THAN NOT THAT THE CONTRACTOR PAID THE WORKERS WHO ACTUALLY PERFORMED THE WORK LESS THAN THE CONTRACTUAL WAGE RATE. AS A REMEMDY FOR THIS PART OF THE VIOLATION, WE ORDER THE CONTRACTOR TO PAY DAMAGES EQUAL TO 1632 HOURS OF WORK MULTIPLIED BY TWO-THIRDS OF THE 2004 – 2005 HOURLY WAGE RATE AND TO PAY DAMAGES EQUAL TO 3005 MULTIPLIED BY THE FULL 2007 – 2008 HOURLY WAGE RATE. THE REASON WE ARE APPLYING THE PARTIAL REDUCTION IS THAT THE JOINT ARBITRATION BOARD HAS ESTABLISHED A PRACTICE OVER THE YEARS OF FREQUENTLY APPLYING SUCH A REDUCTION FOR THE FIRST OFFENSE. WE HAVE CONCLUDED THERE WERE MULTIPLE OFFENSES HERE, AND WE ARE APPLYING THE REDUCTION FOR WHAT MIGHT BE SEEN AS THE FIRST OFFENSE, OR THE FIRST YEAR OF OFFENSES. WE RECOGNIZE LOCAL 21'S CLAIM THAT THESE DAMAGES SHOULD BE BASED ON THE FULL HOURLY RATE RATHER THAN TWO-THIRDS OF THAT AMOUNT. WE HAVE CHOSEN TO AWARD DAMAGES FOR THIS PART OF THE WORK BASED ON THE LOWER RATE BECAUSE EVEN THOUGH LOCAL 21 AND ITS MEMBERS WERE IMPROPERLY DEPRIVED OF ALL THE WORK AND WAGES, THE CONTRACTOR DID PAY SOME WAGES FOR THIS WORK. WE BELIEVE WE WOULD HAVE BEEN JUSTIFIED IN AWARDING THIS PORTION OF THE DAMAGES IN THE WAY REQUESTED BY LOCAL 21 AND WE HAVE DONE THAT FOR THE LATER VIOLATIONS, BUT WE DETERMINED IT WAS PROPER TO APPLY THE REDUCTION TO THE EARLIER VIOLATIONS BECAUSE THAT IS IN KEEPING WITH AN APPROACH WE HAVE USUALLY FOLLOWED.

BECAUSE IT IS IMPOSSIBLE TO IDENTIFY THE INDIVIDUAL BRICKLAYERS WHO WOULD HAVE RECEIVED THE WORK OPPORTUNITIES AND EARNED THE WAGES IF THE CONTRACTOR HAD NOT BEEN IN VIOLATION, WE ORDER THAT THIS PORTION OF THE DAMAGES BE DIVIDED, ONE PART TO BE DIVIDED BETWEEN THE HEALTH & WELFARE & THE PENSION FUNDS COVERING THE AREA WHERE THE WORK WAS PERFORMED, ALONG WITH THE ANNUITY FUND AND DCTC FUND, DIVIDED IN PROPORTION TO EACH OF THOSE FUNDS' CONTRIBUTION RATES, AND THE OTHER PART TO THE DISTRICT COUNCIL. WE BELIEVE ORDERING THESE PAYMENTS TO BE MADE TO THESE BENEFIT FUNDS AND THE DISTRICT COUNCIL WILL BEST SERVE THE BRICKLAYERS WHO WERE IMPROPERLY DEPRIVED OF WORK OPPORTUNITIES BY THE CONTRACTOR'S IMPROPER ACTIONS. THE EXACT DIVISION OF THESE LOST WAGE DAMAGES WILL BE MADE IN SUCH A WAY AS TO PROVIDE THAT THE TOTAL OWED TO THE FOUR BENEFIT FUNDS AND

JULIAN MASONRY CORP.
PAGE 3 OF 4

TO DISTRICT COUNCIL NO. 1, AFTER TAKING INTO ACCOUNT AMOUNTS OWED TO THE FUNDS FOR LOST CONTRIBUTION EQUIVALENT DAMAGES AND TO DISTRICT COUNCIL NO. 1 FOR LOST HOURLY DUES EQUIVALENT DAMAGES, WILL BE THE SAME.

THE JOINT ARBITRATION BOARD FINDS THAT THE CONTRACTOR MUST PAY DAMAGES AS SHOWN TO THE DESIGNATED FRINGE BENEFIT FUNDS AND TO DISTRICT COUNCIL NO.1 AS FOLLOWS:

**LOST CONTRIBUTION EQUIVALENT DAMAGES TO FRINGE BENEFIT FUNDS 2004-2005:**

| FUND | RATE | HOURS | TOTAL |
|---|---|---|---|
| MASONRY INSTITUTE (WELFARE) | $5.65 | 1632 | $9,220.80 |
| PENSION | $3.59 | 1632 | 5,858.88 |
| ANNUITY | $2.50 | 1632 | 4,080.00 |
| D.C.T.C. | $ .30 | 1632 | 489.60 |
| **D.C. DUES EQUIVALENT**: | $1.16 | 1632 | $1,893.12 |

**LOST CONTRIBUTION EQUIVALENT DAMAGES TO FRINGE BENEFIT FUNDS 2007-2008:**

| FUND | RATE | HOURS | TOTAL |
|---|---|---|---|
| MASONRY INSTITUTE (WELFARE) | $7.70 | 3005 | $23,138.50 |
| PENSION | $4.77 | 3005 | 14,333.85 |
| ANNUITY | $3.50 | 3005 | 10,517.50 |
| D.C.T.C. | $ .25 | 3005 | 751.25 |
| **D.C. DUES EQUIVALENT**: | $1.51 | 3005 | $ 4,537.55 |

THE JOINT ARBITRATION BOARDS FURTHER FINDS THAT THE CONTRACTOR MUST PAY $6,985.00 TO LOCAL 21 ILLINOIS BASED ON LOST INITIATION FEE DAMAGES OF $550.00 AND LOST DUES DAMAGES OF $85.00 ON EACH OF ELEVEN WORKERS.

**LOST WAGE DAMAGES COMPONENT 2004 – 2005:**
HOURS: 1632       RATE: $21.37                    TOTAL: $ 34,875.84
                  (66.67% OF TOTAL)

**LOST WAGE DAMAGES COMPONENT 2007 – 2008:**
HOURS: 3005       RATE: $36.43                    TOTAL: $109,472.15

TOTAL LOST WAGE DAMAGES TO LOCAL 21 WELFARE & PENSION, ANNUITY FUND, AND DCTC FUND:                                                           $ 41,194.14

JULIAN MASONRY CORP.
PAGE 4 OF 4

TOTAL LOST WAGE DAMAGES TO DISTRICT COUNCIL NO. 1: $103,153.85

**SUMMARY OF DAMAGES:**

| | |
|---|---|
| TO MASONRY INSTITUTE (WELFARE) | -- $ 52,008.90 |
| TO LOCAL 21 PENSION | -- $ 32,427.39 |
| TO DISTRICT COUNCIL NO. 1 ANNUITY | -- $ 22,959.91 |
| TO DIST. COUNCIL TRAINING CENTER | -- $ 2,188.32 |
| TO DISTRICT COUNCIL NO. 1 | -- $109,584.52 |
| TO LOCAL 21 ILLINOIS | -- $ 6,985.00 |
| **TOTAL:** | **$226,154.04** |

IF THE UNION OR THE FUNDS OBTAIN EVIDENCE OF ADDITIONAL WORK PERFORMED IN VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT, THEY MAY FILE A NEW GRIEVANCE AND THE JOINT ARBITRATION BOARD WILL CONSIDER AWARDING FURTHER DAMAGES.

IF THE INDIVIDUALS AND BUSINESSES IDENTIFIED AS THE CONTRACTOR FAIL TO MAKE THE PAYMENTS AS PROVIDED FOR IN THIS AWARD AND THERE IS ANY LEGAL ACTION CONCERNING IT, THE CONTRACTOR SHALL REIMBURSE THE UNION AND/OR THE FUNDS FOR ALL COSTS AND LEGAL FEES INCURRED IN SUCH LEGAL ACTION, AND SHALL ALSO PAY INTEREST AT THE RATE OF 10% A YEAR FROM THE DATE OF THE HEARING, FEBRUARY 7, 2008, TO THE DATE OF PAYMENT.

_____
RICHARD LAUBER

_____
JOHN THOMPSON

_____
RICHARD PORTER

_____
PETE CULVER